**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

**STEPHANIE D. YOUNGER, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF ASHLEY YOUNGER,
DECEASED, AND**

**TO THE USE OF ANTONIO MAURICE
PERRY,**

      **Plaintiffs,**

**vs.**                                     **Civil Action No.:** _____

**UNITED STATES OF AMERICA,**

      SERVE ON:

      United States Attorney General
      Department of Justice
      10th and Pennsylvania Avenue, NW
      Washington, DC  20530

      and:

      Rod J. Rosenstein
      United States Attorney
      for the District of Maryland
      36 S. Charles Street, 4th Fl.
      Baltimore, Maryland 21201

      **Defendant.**

**COMPLAINT**

      COMES NOW, Plaintiffs, Stephanie D. Younger, Individually and as Personal Representative of

the Estate of Ashley Younger, Deceased, and Use Plaintiff  Antonio Maurice Perry, in a survival action

pursuant to Md. Code (2010), § 7-401 of the Estates and Trusts Article, and in a wrongful death action

pursuant to Md. Code Ann. (2010) § 3-901 *et seq*. of the Courts and Judicial Proceedings Article, by her

counsel, Cara J. Luther and Baum, Hedlund, Aristei & Goldman, P.C., and for this Complaint against

Defendant, United States of America, alleges on information and belief:

## PARTIES

1.      Plaintiffs' decedent was a resident and domiciliary of the State of Maryland at the time of

her death.  Plaintiffs are Stephanie D. Younger, the surviving mother of the decedent and Personal

Representative of the Estate of Ashley Younger, deceased, and Use Plaintiff Antonio Maurice Perry,

surviving father of the Decedent.  Plaintiffs bring this action on behalf of Stephanie D. Younger,

Individually, the Estate of Ashley Younger, deceased, and the following individuals, comprising of

those with claims or potential claims as beneficiaries, survivors, and heirs of the decedent.

| Name | Relationship to Deceased |
| --- | --- |
| Stephanie D. Younger | Mother |
| Antonio Maurice Perry | Father |

All other beneficiaries, survivors, and heirs under the applicable law.

2.      Defendant United States of America

## JURISDICTION AND VENUE

3.      This action arises against the United States under the Federal Tort Claims Act (FTCA),

Sections 2671-2680 of Tile 28 of the United States Code (28 USC § 2671-2680).

4.      This Court is vested with jurisdiction over this matter pursuant to 28 USC § 1346(b).

5.      Defendant, United States of America, will be served through the United States Attorney General and the U.S. Attorney for the District of Maryland pursuant to Rule 4(I) of the Federal Rules of Civil Procedure.

6.      Plaintiff Stephanie D. Younger resides in Waldorf, Charles County, Maryland, and the events alleged in this Complaint occurred in the Southern Division of this Court.

7.      Prior to the institution of this action and on or about February 19, 2009, Plaintiffs filed a timely administrative claim with the United States Department of Transportation, Federal Aviation Administration ("FAA") as required by 28 USC §2675(a).

8.      On September 1, 2010, the FAA administratively denied Plaintiffs' claims by letter denying responsibility for the injuries at issue.

9.      Plaintiffs have elected to file suit in accordance with 28 USC § 2675.

## GENERAL ALLEGATIONS

10.     Defendant, the United States of America, operates and maintains the Federal Aviation Administration ("FAA") which provides air traffic controllers to, among other things, facilitate and control aircraft in flight, on take-off and during landing, to provide necessary information and assistance to pilots and to control the airspace for safe passage by aircraft and the passengers thereon between various points in the Washington, D.C. metropolitan area.

11.     At all time relevant hereto, the Maryland State Police Aviation Command ("MSP") operated a public use helicopter service on behalf of the citizens of Maryland under Part 91 of the Federal Aviation Regulations to conduct, among other things, medical transportation flights.

12.     At all times relevant, Decedent Ashley Younger was an injured traffic accident victim who was being transported by an MSP public use helicopter operating in positive controlled airspace under the jurisdiction and responsibility of the Federal Aviation Administration.

13.     In the latter hours of September 27, 2008, MSP dispatched a helicopter bearing the FAA registration number N92MD ("the Aircraft"), call sign "Trooper 2," from its base at Andrews Air Force Base ("ADW") to a motor vehicle accident in the Waldorf, Maryland area for a medical transportation flight.

14.     The flight departed under Visual Flight Rules ("VFR") and visibility was otherwise very good at that time.

15.     The Aircraft arrived at or near the motor vehicle accident scene, landed, loaded two (2) medical patients, and departed with its Pilot, one flight paramedic, and one field provider.  The destination was Prince George's Hospital Center (PGH), in Cheverly, Maryland.

16.     The persons on board Trooper 2 at the time were patient Ashley Younger, patient Jordan Wells, pilot Steven Bunker, paramedic Mickey Lippy and field provider Tanya Mallard.

17.     Due to the deteriorating weather, the flight encountered instrument meteorological conditions ("IMC") where visibility was severely restricted or otherwise non-existent, such that the Aircraft was not able to land at PGH.

18.     Requesting an instrument clearance from FAA air traffic controllers and diversion to ADW and an instrument approach to ADW runway 19R, the Aircraft proceeded in a southerly direction away from PGH and towards ADW.

4

19.     The Aircraft traveled in airspace over the State of Maryland that is controlled by FAA air traffic controllers.

20.     At all times relevant and during the approach to ADW, the pilot of Trooper 2, Steven Bunker, was in direct contact with, and taking direction from, FAA air traffic controllers, all of whom were acting within the scope of their employment with the FAA.

21.     Pilot Bunker was provided weather information by FAA air traffic controllers during the course of the flight and on the approach to ADW.

22.     The weather information provided to Pilot Bunker by FAA air traffic controllers was old and inaccurate, suggesting that visibility was much greater than that which actually existed at ADW at the time.

23.     At all times relevant, FAA air traffic controllers were advised by Pilot Bunker that medivac patients were on board the Aircraft and that he had encountered instrument meteorological conditions necessitating their assistance to safely complete the flight.

24.     During his approach to ADW, FAA air traffic controllers responsible for providing ATC service to the Aircraft exhibited numerous operational and procedural deficiencies, including, but not limited to, unresponsiveness, inattention, and poor radar vectoring.

25.     These deficiencies were unnecessary and unreasonable distractions to Pilot Bunker that increased his workload by requiring him to compensate for the substandard services provided to him by FAA air traffic controllers.

26.     Just before midnight on September 27, 2008, Pilot Bunker reported to FAA air traffic controllers that he was not picking up the glideslope — the electronic navigation aid designed to provide vertical guidance to the Aircraft during landing on runway 19R at ADW.

27.     The air traffic controller at ADW's tower replied "it's (the glidescope) showing green on the panel but you're the only aircraft we've had in a long time so I don't really know if it's working or not."

28.     Almost immediately thereafter, and at approximately three (3) minutes before midnight, Pilot Bunker requested an Airport Surveillance Radar (ASR) approach.

29.     A request for an ASR approach is a request from an aircraft to air traffic controllers to provide guidance to the runway using ground-based radar.

30.     The ADW FAA air traffic controller replied that she was not "current" to provide that service to Pilot Bunker and neither thereafter inquired as to the pilot's intentions nor did she render, or attempt to render, any other assistance to the Aircraft.

31.     There were no further communications, attempted or otherwise, with Trooper 2 by the ADW FAA air traffic controller.  The ADW FAA air traffic controller also made no attempt to locate the Aircraft after she lost primary radar contact with it and after it failed to cross the threshold of the runway.

32.     The Aircraft impacted terrain sometime after its last communication with the ADW FAA air traffic controller, causing injury to and the death of four (4) of the five (5) occupants on board, including passenger Ashley Younger, and injuring the sole surviving passenger, Ms. Jordan Wells.

**COUNT I - WRONGFUL DEATH**

**NEGLIGENCE OF AGENTS OF THE UNITED STATES OF AMERICA**

33.     The allegations of the previous paragraphs are incorporated herein by reference.

34.     At all times relevant hereto, the air traffic controllers who were in contact with Pilot

Bunker were acting within the scope of their employment with the United States and had a duty to

provide for the safe passage of the Aircraft and its passengers through FAA-controlled airspace, and

knew or should have known, that all aboard the Aircraft, including Ashley Younger, relied upon air

traffic controllers to provide, and who had a duty to provide, certain accurate information, including but

not limited to (1) current weather conditions, (2) required and necessary assistance to pilots, especially

to pilots of medivac helicopters with critical care patients on board, and (3) warnings about hazardous

conditions to assure passenger safety when danger to the aircraft is immediate and extreme or when the

air traffic controllers knew or reasonably should have known that Trooper 2 and Pilot Bunker were

encountering navigational and weather related difficulties and perceived mechanical malfunctions.

35.     The FAA air traffic controllers on duty the evening of September 27, 2008 and who

handled Trooper 2 breached their duty of care to those on board the Aircraft by, without limitation: (1)

failing to provide Pilot Bunker with the most accurate and relevant weather information under rapidly

changing and deteriorating weather conditions; (2) failing to monitor the approach of Trooper 2 on radar

during its attempted landing at ADW; (3) failing to provide the Aircraft with a proper Instrument Flight

Rules clearance and transponder code; (4) failing to provide assistance to the Pilot Bunker when it was

known to the controllers that: (a) the Aircraft was traveling in very close proximity to secure and

restricted flight zones in and around the D.C. metropolitan area; (b) the pilot had already demonstrated

7

distraction and difficulty during the approach; (c) the pilot had reported experiencing unexpected and limited visibility; (d) the pilot had reported that he was experiencing perceived malfunctions with his navigational equipment; (e) that weather conditions were poor, unstable and rapidly changing; (f) the weather information provided by controllers to Pilot Bunker was inaccurate and stale; and (g) the ADW tower air traffic controller lacked situational awareness of the actual weather conditions at ADW at the time of the loss of Trooper 2.

36.     At the time of the attempted landing of Trooper 2 at ADW, FAA air traffic controllers had the duty, time, opportunity and means to provide additional and necessary assistance and warnings to Pilot Bunker, but neglected to do so.

37.     At all times relevant herein, it was reasonably foreseeable that under the facts and circumstances of this case, the failure to provide proper assistance and ATC services to Pilot Bunker, the air traffic controllers' collective failure to follow all proper and operational protocols and procedures, and specifically, the mandates of FAA Order 7110.65 and an ASR approach were likely to result in significant harm to the passengers and others traveling on board the Aircraft.

38.     The acts and omissions of the air traffic controllers as set forth above were a proximate cause of, or otherwise a substantial causative factor resulting in, the loss of Trooper 2 and the resultant injuries to and the subsequent death of Ashley Younger when the Aircraft initially struck trees and subsequently the ground.

39.     As a direct and proximate result of the negligent acts and omissions of the employees of the United States of America, who were acting within the scope of their employment as FAA air traffic controllers,  Stephanie D. Younger, the Surviving Mother of Ashley Younger, sustained pecuniary loss,

mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance and loss of education.

WHEREFORE, Plaintiffs and Plaintiffs' decedent's survivors, and heirs, pray judgment against Defendant for the damages alleged herein, all in excess of the jurisdictional minimum of this Court.

## COUNT II - SURVIVAL ACTION

### NEGLIGENCE OF AGENTS OF UNITED STATES OF AMERICA

40.     The allegations of the previous paragraphs are incorporated herein by reference.

41.     By failing to exercise reasonable care in their official duties, FAA air traffic controllers proximately caused the loss of Trooper 2 thereby resulting in the serious injuries and subsequent death of those on board the Aircraft.

42.     For a measurable period of time prior to her death, Ashley Younger was privy to the communications between Pilot Bunker and FAA air traffic controllers; was aware of the difficulties being encountered by Pilot Bunker; was aware of the imminent crash of the Aircraft; and was able to, and did, experience injuries to her person together with the physical and mental suffering therefrom.

43.     As a direct and proximate result of the negligence of FAA air traffic controllers in failing to carry out their official duties with reasonable care, Ashley Younger experienced great fear and apprehension, and conscious pain and suffering from her injuries for a measurable period of time before her death.

WHEREFORE, Plaintiffs and Plaintiffs' decedent's survivors, and heirs, pray judgment against Defendant as hereinafter set forth:

1.      For general damages in an amount according to proof at trial;

2.      For economic damages according to proof at trial;

3.      For property damages and loss of use of property according to proof at trial;

4.      For funeral, burial, transportation, and related expenses according to proof;

5.      For damages for the Estate of Ashley Younger for survival damages;

6.      For punitive damages as allowed by law;

7.      For prejudgment interest as allowed by law;

8.      For costs of suit incurred herein;

9.      For such other an further relief as the court may deem just and proper.

Date: February 22, 2011                    Respectfully submitted,

                                           BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.

                                           /s/ Cara J. Luther
                                           Cara J. Luther, Esquire
                                           (Fed. Bar No. 013832)
                                           1250 24th Street, NW, Suite 300
                                           Washington, D.C.  20037
                                           Telephone: (202) 466-0513
                                           Facsimile:  (202) 466-0527
                                           cluther@baumhedlundlaw.com

                                           Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all fact issues and counts in this case.

Date: February 22, 2011        Respectfully submitted,

                                        Baum, Hedlund, Aristei & Goldman, P.C.

                                        /s / Cara J. Luther
                                        Cara J. Luther, Esquire
                                        (Fed. Bar No. 013832)
                                        1250 24th Street, NW, Suite 300
                                        Washington, D.C. 20037
                                        Telephone: (202) 466-0513
                                        Facsimile:  (202) 466-0527
                                        cluther@baumhedlundlaw.com

                                        Counsel for Plaintiff

11